UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
Mauricio Humberto GALO ESPINAL,

                          Petitioner,

    -against-

Thomas DECKER, *et al.*,

                          Respondents.

------------------------------------------------------------- X

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

17 Civ. 3492 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Petitioner Mauricio Humberto Galo Esponal ("Galo"), a native of El Salvador, has been a lawful permanent resident ("LPR") of the United States since 1990. In 2015, the Department of Homeland Security ("DHS") initiated removal proceedings against Galo. DHS has detained Galo pursuant to 8 U.S.C. 1225(b)(2)(A) since December 6, 2016. Galo has filed a petition for a writ of habeas corpus ordering respondents to provide Galo with an individualized bond hearing before an immigration judge. The petition is granted.

## BACKGROUND

        Galo is a 57-year old Salvadoran man who has lived in the United States since 1981, and has been an LPR since 1990. Pet. ¶ 1. On April 23, 2015, Galo returned to the United States from a brief trip to El Salvador. Upon his arrival, DHS designated Galo as an "arriving alien" pursuant to 8 U.S.C. 1225(b)(2)(A) ("Section 1225(b)"), despite his LPR status. DHS did not, however, detain Galo or instruct him to report for an immigration hearing. Pet. ¶ 22. On September 15, 2015, DHS formally initiated removal proceedings against Galo by serving him with a Notice to Appear ("NTA"). The stated basis for Galo's removal is that Galo was convicted in 2005 and 2006 of several crimes involving moral turpitude (criminal trespass, grand

larceny, and attempted grand larceny). *See* 8 U.S.C. § 1182(a)(2)(A). DHS did not detain Galo at that time.

On December 7, 2016, approximately 20 months after he returned to the United States, Galo was detained by Immigration and Customs Enforcement ("ICE"). Pet. ¶ 23. Galo's detention came one day after he was convicted for criminal mischief, a conviction that stemmed from a May 20, 2016 arrest. Declaration of Joseph T. Pujol ¶¶ 16-18. On May 5, 2017, Galo filed a request for humanitarian parole, which was denied on June 2, 2017. Pujol Decl. ¶¶ 23, 25. Galo's removal hearing has been adjourned several times to enable him to obtain counsel and undergo psychiatric evaluations in support of his asylum application. Galo had master calendar hearings on February 10, March 6, March 29, and May 10 of this year. Galo's next calendar date is July 12, 2017. Pujol Decl. ¶¶ 20-26.

As of June 7, 2017, Galo has been detained for six months.

## LEGAL FRAMEWORK

Section 1226(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c), provides that the government shall detain any alien who has been convicted of certain crimes, such as crimes involving drugs and multiple crimes involving moral turpitude. Section 1226(c) applies to all aliens, including those with LPR status. In *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), the Second Circuit held that in order to avoid the constitutional concerns raised by indefinite detention, individuals detained pursuant to Section 1226(c) "must be afforded a bail hearing before an immigration judge within six months of his or her detention." 804 F.3d at 616. *Lora* further held that "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.*

Section 1225(b)(2)(A), by contrast, is relevant only to aliens who are applying for admission to the United States. Section 1225(b)(2)(A) provides that "in the case of an alien who

2

is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding]." 8 U.S.C. § 1225(b)(2)(A). Individuals detained or otherwise subject to this provision are classified as "arriving aliens." *See* 8 C.F.R. § 1001.1 ("The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry.").

As a general matter, LPRs reentering the United States are not considered arriving aliens and thus cannot be detained pursuant to Section 1225(b). *See* 8 U.S.C. § 1101(a)(13)(C) ("An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws[.]"). However, under certain circumstances – including where the LPR has been convicted of a crime involving moral turpitude – the government may properly designate an LPR as an arriving alien. *See* 8 U.S.C. § 1101(a)(13)(C)(v).

## DISCUSSION

The issue I must resolve is whether the Second Circuit's holding in *Lora*, 804 F.3d 601, which requires aliens detained pursuant to Section 1226(c) to receive a bond hearing within six months of their detention, should be extended to LPRs who, upon returning from a brief trip abroad, are designated as an arriving alien and detained pursuant to Section 1225(b)(2). Neither the Second Circuit nor the Supreme Court has addressed this issue, although it is currently pending before both courts.

There is an emerging consensus among courts in this district that due process requires that individuals detained pursuant to Section 1225(b) be provided an individualized bond hearing within six months of their detention. *See Arias v. Aviles*, 2016 WL 3906738, at *10 (S.D.N.Y. July 14, 2016) (Abrams, J.) ("As this Court is persuaded that Petitioner is entitled to the same level of due process protection afforded to LPRs continuously residing in the United

3

States, the Second Circuit's decision in *Lora* dictates that the Court interpret 8 U.S.C. § 1225(b)(2)(A) to include a reasonable temporal limitation of six months on his detention so as to avoid serious constitutional concerns."); *Ricketts v. Simonse*, 2016 WL 7335675, at *1 (S.D.N.Y. Dec. 16, 2016) (Schofield, J.) ("Petitioner is entitled to an individualized bond hearing because his prolonged detention pursuant to 8 U.S.C. § 1225(b)(2) violates his Fifth Amendment right to due process."); *Heredia v. Shanahan*, 2017 WL 1169645, at *5 (S.D.N.Y. Mar. 28, 2017) (Wood, J.) ("The Court is persuaded by the reasoning of *Ricketts* and *Arias*: the Court can find no basis to distinguish a LPR detained before a removal hearing pursuant to § 1226(c) who is entitled to a bail hearing within six months, *Lora*, 804 F.3d at 616, and a LPR detained pursuant to § 1225(b)."); *Morris v. Decker*, 2017 WL 1968314, at *3 (S.D.N.Y. May 11, 2017) (Caproni, J.) ("As in *Arias*, this Court concludes that an LPR absent from the United States for approximately one week possesses the same due process rights at the border as those enjoyed by an LPR continuously present within the United States. And, as in *Arias*, to avoid constitutional concerns, section 1225(b) must be read to include a six-month limitation on the length of detention of an LPR without an individualized bond hearing.").

Two courts in this district have held that aliens detained pursuant to Section 1225(b) are not entitled to a bond hearing. *See Cardona v. Nalls-Castillo*, 177 F. Supp. 3d 815 (S.D.N.Y. 2016) (Scheindlin, J.); *Perez v. Aviles*, 188 F. Supp. 3d 328 (S.D.N.Y. 2016) (Keenan, J.). The statutory and constitutional analysis in both of these opinions, however, was cursory, and neither opinion meaningfully considered relevant Supreme Court jurisprudence.

Respondents argue that because Galo was designated as an "arriving alien" and was detained pursuant to Section 1225(b) instead of Section 1226(c), he is not entitled to the same level of due process as LPRs who never leave the country. This argument fails. Whether Galo was detained pursuant to Section 1225(b) or Section 1226(c) is irrelevant to the question of how much due process he should be afforded, for LPRs such as Galo, who return to the United

4

States after a brief trip abroad, are entitled to the same due process rights as if they had never left the country. In *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953), the Supreme Court held that the constitutional rights of a permanent resident alien who had traveled abroad for four months should be assessed as if he had "not undertaken his voyage to foreign ports but had remained continuously within the territorial boundaries of the United States." Accordingly, the Supreme Court explained that "[f]or purposes of his constitutional right to due process, we assimilate petitioner's status to that of an alien continuously residing and physically present in the United States." 344 U.S. at 596; *see also Landon v. Plasencia*, 459 U.S. 21, 31 (1982) (citing *Chew* for the proposition that "a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien.").

Consequently, there is no substantive basis to distinguish the facts of this case from those of *Lora*. Galo, like the petitioner in *Lora*, is an LPR. Galo, like the petitioner in *Lora*, has been convicted of crimes that can serve as the basis for removal. Had Galo never gone abroad, he would have been detained under Section 1226(c) and been entitled to a bond hearing under *Lora*. The basis of Galo's removal – prior convictions for crimes involving moral turpitude – would have been the same regardless of whether he was detained under Section 1225(b) or Section 1226(c). Galo did not lose his due process rights merely by traveling abroad as an LPR. If that were the case, individuals with no legal status residing in the United States would be afforded greater due process rights than individuals with LPR status who briefly travel abroad.

To comport with the reasoning and principles set out in the Second Circuit's decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), to avoid the constitutional concerns raised by the prospect of indefinite detention, and to protect the due process rights of LPRs, I join numerous other courts in this district and hold that Galo, who has been detained for more than six months, is immediately entitled to an individualized bond hearing at which the

5

government bears the burden to establish by clear and convincing evidence that Galo poses a risk of flight or risk of danger to the community.

## CONCLUSION

For the reasons stated herein, the petition is granted. Respondents must provide Galo with an individualized bond hearing within two weeks of this order. At that bond hearing, respondents shall bear the burden of showing, by clear and convincing evidence, that Galo is a flight risk or a danger to the community. The oral argument currently scheduled for July 5, 2017 is canceled. The Clerk shall mark the case closed.

SO ORDERED.

Dated: June 29, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge